AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
At Albuquerque NM
OCT 06 2015
MATTHEW J. DYKMAN
CLERK

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

34 Mission Park Loop, Los Lunas, Valencia County, New Mexico; further described in Attachment I.

)
)
)   Case No. 15-mr-619
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Described in Attachment A

located in the _____ District of ___New Mexico___ , there is now concealed *(identify the person or describe the property to be seized)*:

Items described in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 USC 841 (a) (1) | Manufacture Marijuana. |

The application is based on these facts:
See attached Affidavit of Special Agent Jeffrey A. Mauldin

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DEA Special Agent Jeffrey A. Mauldin
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/6/15

*Judge's signature*

City and state: Albuquerque, New Mexico

United States Magistrate Judge William P. Lynch
*Printed name and title*

## AFFIDAVIT OF DEA SPECIAL AGENT JEFFREY MAULDIN

I, Jeffrey A. Mauldin, United States Department of Justice, Drug Enforcement Administration (DEA), being first duly sworn state as follows:

### INTRODUCTION

1.    This affidavit is written in support of an application for a search warrant for 34 Mission Park Loop, Los Lunas, Valencia County, New Mexico. The residence is more particularly described as a single-family dwelling, specifically a single-wide mobile home, white in color with a tan strip running horizontally around the trailer. The residence has a front door which faces in a westerly direction and is surrounded by a wooden deck. The property is surrounded by various types of fencing to include concertina wire along the top of the front gate and along portions of the perimeter ( hereafter referred to as "the SUBJECT LOCATION")

2.    I am currently investigating a marijuana cultivation and distribution case involving unknown individuals. The facts and information set forth in this affidavit are based upon my personal knowledge and observations obtained during this investigation, conversations with other officers, and a reliable source of information.

### AFFIANT'S BACKGROUND

3.    I am a Special Agent of the Drug Enforcement Administration, (DEA), United States Department of Justice. I have been assigned to the Albuquerque District Office, in Albuquerque, New Mexico, since January of 2005. I have been employed as a Special Agent since August of 2004. As a Special Agent, I attended a 16-week academy, during which I received approximately 500 hours of specialized narcotics training in Quantico, Virginia. Upon graduation from the DEA academy I was assigned to the Albuquerque District Office to conduct criminal investigations involving the distribution of controlled substances. I have been involved with numerous controlled substances investigations, to include being the Affiant on several Federal Title III Affidavits and Search Warrants. I have also been assigned to the DEA Tactical Diversion Squad, which is responsible for investigating DEA registrants, such as licensed medical practitioners, pharmacies, and pharmaceutical distributors. Furthermore, I have investigated numerous cases involving prescription forgery, by individuals and organizations, involved in the illegal distribution of prescription based controlled substances. Prior to my employment with DEA, I was employed as a Police Officer in Midwest City, Oklahoma, from September 1997 to August of 2004. In that capacity I earned Intermediate and Advanced Police Officer certifications; became a Drug Recognition Expert, certified by the National Highway Transportation and Safety Board along with the International Association of Chiefs of Police; and attended over one hundred hours of specialized narcotics training sponsored by the Association of Oklahoma Narcotics Enforcers.

4.    Based upon my training and experience along with conversations with other law enforcement officers experienced in investigating conspiracy to manufacture, distribute, and possession with intent to distribute controlled substances, I have learned the following:

a) Drug dealers often maintain records of their transactions in a manner similar to the record keeping procedures of legitimate businesses. Even after the drugs are sold, documentary records often remain for long periods of time, even years, to memorialize past transactions, the status of accounts receivable and accounts payable, and the names and telephone numbers of suppliers, customers, and co-conspirators. These records can be maintained on paper, in the form of business and personal ledgers and diaries, calendars, memoranda, pay-owe sheets, IOU's, miscellaneous notes, money orders, customer lists, and telephone address books.

b) These records can reflect names, addresses and/or telephone numbers of associates and co-conspirators, the sale and purchase of controlled substances, customer lists, and amounts of money owed to the trafficker by his customers, and by the trafficker to his suppliers.

c) Records often indicate locations and distribution points of controlled substances, and the purchase of materials, supplies and articles used by the trafficker and co-conspirators in the distribution of controlled substances.

d) Records frequently include the identification of properties such as real property or vehicles owned, rented, leased, controlled, or otherwise utilized by the trafficker and his co-conspirators in the distribution of controlled substances. These records include property rental and ownership records such as deed of trust, and lease and purchase agreements, and vehicle registration, rental and ownership information.

e) These items are stored by drug dealers on their person, in their residences and surrounding garages, outbuildings, carports, yards and cars.

f) Drug dealers usually sell their product for cash. Because pound quantities of controlled substances can sell for thousands of dollars, even at the wholesale level, dealers often have thousands of dollars in cash on hand both as proceeds of sales and to purchase their own supplies. In addition, drug dealers often have other assets generated by their drug business, or purchased with cash earned, such as precious metals and stones, jewelry, real estate, vehicles, and other valuables.

g) Documents showing who owns, occupies, or controls the location being searched also show whom is responsible for the items found on the premises, including contraband and other evidence seized. Documents and items showing the identity of the persons owning, residing in, or controlling the area being searched include, but are not limited to, utility and telephone bills, canceled envelopes and correspondence, outgoing answering machine messages, tax returns, keys, deeds, and mortgage receipts.

h) Drug dealers often take, or cause to be taken, photographs and/or videos of themselves, their associates, their property, including firearms and large sums of money, along with their drugs. These photographs and videos are often contained on cellular telephones, computers, and other electronic media such as external drives. They often maintain these

photographs and/or videos on their person, in their residences, cars, garages, outbuildings, storage buildings, carports, and yards.

i) Drug dealers often maintain firearms and ammunition on their person or in their homes, or cars to protect themselves and their drugs and their drug profits. They also may maintain indicia of firearms such as receipts for firearms and ammunition, boxes for firearms and ammunition, and instruction manuals and other documentation for firearms and ammunition.

j) Marijuana cultivators often grow marijuana continuously throughout the growing season and thus will have marijuana plants at various stages of growth in several different locations to include the primary residence and any storage or outbuildings.

k) Once the marijuana plant is mature, the cultivator will cut the plant at the lower end of the stalk and allow the plant to dry in a sheltered location, which is protected from the elements and from casual view. Once dry, the stems and seeds are removed from the plant. The leaves and especially the "buds" or flowering portion of the plants are packaged for sale. This often takes place in the primary residence and or any storage or outbuildings.

l) Drug dealers utilize cellular telephones daily to direct associates in the procurement, packaging, sale and delivery of controlled substances. With the advent of modern cellular telephones capable of storing large amounts of data, drug dealers often store drug ledgers, associates names, addresses, and contact numbers, along with photographs and videos on the mobile devices. These devices can be stored in any location readily available to the drug dealer, to include such places as a residence, vehicle, storage or outbuilding, and yards.

## UNDERLYING FACTS AND CIRCUMSTANCES

5. On September 28, 2015, I received information that the residents of the SUBJECT LOCATION were growing marijuana outdoors around the residence. I received this information from a Valencia County Sheriff's Deputy, currently assigned to DEA as a Task Force Officer.

6. On September 28, 2015, I performed aerial surveillance above the SUBJECT LOCATION and I observed what appeared to be marijuana plants under cultivation in two locations around the SUBJECT LOCATION.

7. On September 28, 2015, I spoke to a Source of Information (SOI) by telephone and learned that SOI had seen marijuana plants growing along the fence between SOI's residence and the SUBJECT LOCATION. The SOI agreed to allow agents to visit SOI's property and view the marijuana plants growing at the SUBJECT LOCATION.

8. On September 29, 2015, I met with SOI at SOI's residence. SOI said that the next door neighbors were growing marijuana and that it was clearly visible from SOI's side of the fence which separated SOI's property from the SUBJECT LOCATION. The SOI further informed me that the residents of the SUBJECT LOCATION had a large amount of vehicle and foot traffic at the SUBJECT LOCATION. SOI further informed me that the visitors would only stay a short time at the SUBJECT LOCATION before leaving; this activity had been ongoing since approximately January of 2015. SOI further informed me that the residents of the SUBJECT LOCATION would often shoot firearms into the air late at night – in what SOI believed was an effort to scare the surrounding residents and dissuade them from contacting law enforcement.

9. While speaking with SOI, I was able to look through the slats in the fence and clearly see live marijuana plants growing at the SUBJECT LOCATION. The plants were very healthy, had been intentionally watered and cared for, and were secreted around the property in places which were difficult to see from the road. The plants were approximately four to six feet tall and were approaching maturity. There were approximately 30-50 plants visible.

10. On September 29, 2015, I issued an Administrative Subpoena to the New Mexico Department of Health requesting information on any valid licenses to grow medical marijuana on the property located at the SUBJECT LOCATION. On September 30, 2015, I received a response indicating that no valid licenses had been issued for the SUBJECT LOCATION.

## CONCLUSION

11. I respectfully request the issuance of a search warrant authorizing any agent of the Drug Enforcement Administration, with the assistance of other law enforcement officers, to enter and search the premises and property described in Attachment A for items more particularly described in Attachment B, all of which are evidence of and fruits and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1). Also to be searched is the surrounding curtilage, since I know that marijuana is being grown on the property and that drug dealers often hide and bury controlled substances and large quantities of US currency. Also to be searched are any vehicle(s) parked directly on the premises, provided the vehicles can be connected to an occupant or permanent resident of the SUBJECT LOCATION to be searched prior to searching said vehicle(s). I know through my training an experience that drug dealers often hide or otherwise conceal their drugs in and on vehicles.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

_____
Jeffrey A. Mauldin
Special Agent
Drug Enforcement Administration

Sworn to before me, and subscribed in my presence on this ___6th___ day of October in the year 2015 in Albuquerque, New Mexico.

_____
William P. Lynch
United States Magistrate Judge

# ATTACHMENT A

### Location To Be Searched

The attached search warrant authorizes the search of the property described below, to include the residence, all attached and unattached storage and outbuildings, all vehicles, and areas in or on which the items to be seized could be concealed.

34 Mission Park Loop, Los Lunas, Valencia County, New Mexico. The residence is particularly described as a single family dwelling, specifically a single wide mobile home, white in color with a tan strip running horizontally around the trailer. The residence has a front door which faces in a westerly direction and is surrounded by a wooden deck. The property is surrounded by various types of fencing to include concertina wire along the top of the front gate and along portions of the perimeter.



## ATTACHMENT B

## Items To Be Seized

1. Any controlled substances enumerated in 21 U.S.C. § 812 for which possession without proper prescription, registration or authorization is illegal and in violation of 21 U.S.C. § 841.

2. Records of Money Laundering and drug records, in particular, ledgers, drug transactions, account books, notes, names and/or code names or nicknames and/or identifying information reflecting customers, amounts of drugs bought and sold, amounts of money paid, owed or collected and all appointment calendars.

3. Large amounts of U.S. currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of drug transactions.

4. Any and all drug customer lists, suppliers' lists, or any notes containing the individual names of such persons, telephone numbers and/or addresses of these customers or suppliers and any corresponding records of accounts receivable, money paid or received, drugs supplied or received, or cash received to pay for controlled substances or intended to pay for controlled substances.

5. Indications of ownership or control of these premise and/or other premises used in unlawful drug trafficking activity, including but not limited to, utility bills, cancelled checks, or envelopes and deeds or leases.

6. Indications of ownership or control over any vehicles located at the place to be searched, including but not limited to, titles, registration, gas receipts, repair bills and keys belonging to that vehicle.

7. Records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks received or sent, passbooks, bank checks, safe deposit box key(s), vault key(s), safes and other items evidencing the obtaining, secreting and/or concealment, and or expenditures of money.

8. Electronically stored data, computerized or written books, records, receipts, diaries, notes, ledgers, airlines tickets, cashier's checks, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances and the outstanding debts and collections from controlled substances that have been distributed.  The electronically stored data should include electronic records or data being stored at a remote physical location(s) as evidenced by an existing or previously mapped network connection(s) via the internet or other private network(s).

9. Cellular telephones (including the search of such cellular telephones for those items described above in paragraphs 2, 4, 5, 6, 7, and 8).

10. Firearms and ammunition.